**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:

LAURELS OF FALLSBURG LLC,

Alleged Debtor.

Chapter 11 (Involuntary)

Case No. 25-35887 (KYP)

---

In re:

651 LAKES LLC,

Alleged Debtor.

Chapter 7 (Involuntary)

Case No. 25-35891 (KYP)

---

In re:

MAGICSOFT GROUP INC.,

Alleged Debtor.

Chapter 7 (Involuntary)

Case No. 25-35888 (KYP)

---

ARON BERLIN, *et al.*,

Plaintiffs,

-against-

JENNIFER SAFKEN, *et al.*,

Defendants.

Adv. Pro. No. 25-09019 (KYP)

---

**MEMORANDUM DECISION (I) DENYING AHRON BERLIN'S MOTION FOR RECONSIDERATION, AND (II) FIXING BANKRUPTCY RULE 9011 SANCTION AWARD PAYABLE TO AHUVA GAMLIEL**

**APPEARANCES:**

AHRON BERLIN
*Pro Se Petitioning Creditor*
1909 New York Avenue
Brooklyn, NY 11210

- and -

4118 14th Avenue
Brooklyn, NY 11219

ISRAEL MEIR FARKASH
*Pro Se Petitioning Creditor*
9 Ramsey Terrace
Fair Lawn, NJ 07410

EGGNATZ PASCUCCI, P.A.
*Counsel for Defendant Ahuva Gamliel*
7450 Griffin Rd., Suite 230
Davie, FL 33314
By: Joshua H. Eggnatz, Esq.
Of Counsel

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2
Leo O'Brien Federal Building
11A Clinton Avenue, Room 620
Albany, NY 12207
By: Alicia M. Leonhard, Esq.
Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Ahron Berlin, a/k/a "Aron" Berlin, a/k/a "Aharon" Berlin, a/k/a "Aaron" Berlin, a/k/a "Ahraon" Berlin ("Berlin") has moved for reconsideration ("Reconsideration Motion") of two recent sanctions orders issued against him. The latter order required Berlin to pay certain attorney's fees and costs incurred by Ahuva Gamliel ("Gamliel") under Federal Bankruptcy Rule 9011, and Berlin objects to the amount of fees sought ("Fee Objection").

For the reasons stated, (i) the Reconsideration Motion is denied, and (ii) the Fee Objection is resolved as set forth herein.

## BACKGROUND

The background relevant to the instant matters is set forth in this Court's (i) *Memorandum Decision Dismissing Bad Faith Involuntary Bankruptcy Cases and Enjoining Petitioning Creditors Israel Farkash and Ahron Berlin From Filing Another Involuntary Bankruptcy Petition for Five Years*, dated August 31, 2026 ("Dismissal Decision") (ECF Doc. # 59),[1] and (ii) *Memorandum Decision and Order Granting in Part and Denying in Part Ahuva Gamliel's Motion to Impose Sanctions Under Federal Bankruptcy Rule 9011*, dated September 8, 2026 ("Rule 9011 Decision")[2] (ECF Doc. # 61). The Court assumes familiarity with both decisions, and they are incorporated herein by reference. The pertinent parts of the decisions are summarized in the sections that follow.

### A. Dismissal Decision

In the Dismissal Decision, this Court granted a motion ("UST Sanctions Motion") of the United States Trustee for Region 2 ("U.S. Trustee") to sanction serial involuntary bankruptcy petition filers Berlin and Israel Farkash ("Farkash"). Berlin's latest involuntary bankruptcy petition was filed against putative debtor MagicSoft Group Inc. ("MagicSoft"). *See In re MagicSoft Group Inc.*, Case No. 25-35888 (KYP) ("MagicSoft Case"). Prior to the bankruptcy filing, MagicSoft and three individuals associated with MagicSoft – Gabriel Bar Shany, Shani Bar, and Bella Cohen (collectively, the "MagicSoft

---

[1] "ECF Doc. # _" refers to documents filed on the electronic docket of *Berlin, et al. v. Safken, et al.*, Adv. P. No. 25-09019 (KYP).

[2] Copies of the Dismissal Decision and Rule 9011 Decision are available on the Westlaw database under *In re Laurels of Fallsburg LLC*, --- B.R. ---, 2026 WL 2566214 (Bankr. S.D.N.Y. Aug. 31, 2026) and *Berlin v. Safken* (*In re MagicSoft Grp., Inc.*), Adv. P. No. 25-09019 (KYP), 2026 WL 2689979 (Bankr. S.D.N.Y. Sept. 8, 2026), respectively.

Associates") – were defendants in actions pending in the Circuit Court of the Eleventh Judicial Circuit, Miami Dade County, Florida ("Florida State Court"), including one commenced by Gamliel. *See Gamliel v. MagicSoft Group., Inc., et al.*, Local Case No. 2025-004959-CA-01 ("Gamliel Action"). The plaintiffs in these actions alleged that the MagicSoft Associates fraudulently obtained and retained sizeable investments made into a sham real estate investment company, *i.e.*, MagicSoft. (Dismissal Decision at 25.)

Berlin has a history of filing involuntary bankruptcy petitions in bad faith. As detailed in the Dismissal Decision, Berlin (and Farkash) filed numerous involuntary petitions with no intent to prosecute those petitions, but instead, repeatedly used tactics to delay administration of the cases to keep the automatic stay in place. (*Id.* at 12-22.) On August 17, 2025, Berlin filed an involuntary bankruptcy petition against MagicSoft and deployed the same dilatory tactics. (*Id.* at 22-23.) Berlin then took actions to impede progress of the Gamliel Action and protect the MagicSoft Associates including (i) notifying the Florida State Court of the bankruptcy stay imposed by the MagicSoft Case, (ii) threatening to sue Gamliel if she continued to prosecute the Gamliel Action, and (iii) amending the name of the putative debtor in the involuntary bankruptcy petition to match the named defendant in the Gamliel Action. (*Id.* at 26-27.)

On November 5, 2025, Berlin and the MagicSoft Associates filed an adversary proceeding in this Court against Gamliel, the other plaintiffs who had commenced actions in the Florida State Court, and their attorneys. *See Berlin, et al. v. Safken, et al.*, Adv. P. No. 25-09019 (KYP) ("MagicSoft Adversary Proceeding"). In the MagicSoft Adversary Proceeding, Berlin and the MagicSoft Associates sought damages for alleged willful violations of the automatic stay. (Dismissal Decision at 28.) Neither Berlin nor the MagicSoft Associates prosecuted the MagicSoft Adversary Proceeding, and the

MagicSoft Associates voluntarily dismissed the action in February 2026. (*Id.* at 28-29.) However, this Court retained jurisdiction over the MagicSoft Adversary Proceeding to consider any sanctions motions against Berlin and/or the MagicSoft Associates. (*Id.* at 29.) Gamliel filed a motion for sanctions, and the resolution of that motion is discussed in the next section.

Ultimately, the Court ruled that Berlin filed the MagicSoft Case in bad faith and dismissed the case:

> Berlin went far beyond acting as a "friendly" petitioning creditor in the MagicSoft Case. He used a pointless involuntary filing, and a bogus adversary proceeding, to actively prevent creditors from asserting their rights against the putative debtor as well as three individuals associated with the putative debtor. The MagicSoft Case must be dismissed because of Berlin's flagrant bad faith.

(*Id.* at 29-30.) Moreover, the Court sanctioned Berlin and Farkash for their multiple, bad faith involuntary petitions by issuing an injunction barring either of them from filing another involuntary bankruptcy petition in any jurisdiction in the United States for a period of five years. (*Id.* at 30-34.)

On September 3, 2026, the Court entered an order ("September 3 Order") consistent with its rulings in the Dismissal Decision. (ECF Doc. # 60.)[3]

## B. Rule 9011 Decision and Award of Attorney's Fees and Costs

As stated above, this Court retained jurisdiction over the MagicSoft Adversary Proceeding to consider sanctions motions, and Gamliel moved for sanctions against Berlin and the MagicSoft Associates under Federal Bankruptcy Rule 9011 ("Gamliel

---

[3] Berlin appealed the September 3 Order, but the District Court dismissed the appeal on October 1, 2026 for failure to prosecute. A copy of the District Court's dismissal order is available at ECF Doc. # 75.

Sanctions Motion"). (Rule 9011 Decision at 2.) Gamliel asserted that numerous documents filed by Berlin and the MagicSoft Associates were frivolous and vexatious. (*Id.* at 9.) However, due to Gamliel's failure to satisfy the safe-harbor provisions in Bankruptcy Rule 9011(c)(2), the Court observed that it could only consider sanctions for submission of the original and amended involuntary petitions filed in the MagicSoft Case. (*Id.* at 9-10.)

The Court ruled that Bankruptcy Rule 9011 sanctions against Berlin were appropriate because he had submitted the original and amended involuntary petitions for an improper purpose. (*Id.* at 10.) In contrast, the Court declined to issue sanctions against the MagicSoft Associates because they had not submitted those petitions. (*Id.* at 11-12.) As a sanction, the Court ordered Berlin to pay Gamliel's reasonable attorney's fees and costs incurred (i) in prosecuting the Gamliel Sanctions Motion under Bankruptcy Rule 9011(c)(2)(C), and (ii) directly resulting from Berlin's filing the original and amended involuntary petitions under Bankruptcy Rule 9011(c)(4)(A)(iii). (*Id.* at 10-11.) The Court directed Gamliel's counsel to file a certification setting forth the attorney's fees and costs incurred for both categories. (*Id.* at 13-14.) The contents of counsel's certification are discussed *infra*.

### C. The Court's Prior Rejection of Berlin's "Mistaken-Identity" Argument

The UST Sanctions Motion was served on interested parties, including Berlin at the address he listed on the involuntary petition in the MagicSoft Case: 4118 14th Avenue, Brooklyn, NY ("4118 14th Ave."). (*See* ECF Doc. # 16-4 (affirmation of service).) The deadline to object to the UST Sanctions Motion was February 3, 2026 (*see* ECF Doc. # 16 (notice of motion)), and the Court heard argument on February 10, 2026.

Berlin neither filed a timely objection nor appeared at the February 10 hearing. Instead, on March 16, 2026, Berlin filed a document claiming that he was not the person who participated in the MagicSoft Case or the MagicSoft Adversary Proceeding. (*See Corrected Motion to Correct the Record, For Protective Relief, and Declaration of Ahron Berlin*, dated Mar. 16, 2026 ("Original Berlin Submission") (ECF Doc. # 44).) The Court addressed Berlin's arguments in the Dismissal Decision. First, the Court discounted Berlin's point that the person identified in the MagicSoft matters was "Aron" Berlin, whereas his name is "Ahron" Berlin. Berlin had a history of using numerous spelling variations of his first name in court filings, and his use of "Aron" in the MagicSoft matters was a continuation of that pattern. (Dismissal Decision at 35.) Second, the Court rejected Berlin's sworn statement had he had "no association" with 4118 14th Ave. listed on the involuntary petition for the MagicSoft Case. Berlin had a history of using different addresses in court filings and had previously declared, under penalty of perjury, that he resided at 4118 14th Ave. (*Id.* at 35-36.) Third, the Court found Berlin's mistaken-identity contention not credible because the dilatory tactics used in the MagicSoft Case were the same ones he deployed in prior involuntary bankruptcy cases. (*Id.* at 36.)

**D. Berlin's Current Submissions**

Beginning on September 17, 2026, Berlin submitted multiple documents seeking various forms of relief.[4] Berlin's requests can be grouped into two categories: (1) for

---

[4] Berlin has filed the following documents:

- *Motion of Ahron Berlin to Alter or Amend the September 3 and September 8, 2026 Personal Sanctions Determinations; Alternative Request For Limited Further Proceedings*, dated Sept. 17, 2026 (ECF Doc. # 65);

reconsideration of the rulings in the September 3 Order and the Rule 9011 Decision (*i.e.*, the Reconsideration Motion), and (2) for reduction of attorney's fees and costs payable to Gamliel under the Rule 9011 Decision (*i.e.*, the Fee Objection).

On September 24, 2026, the Court entered a scheduling order ("Scheduling Order"), which permitted interested parties to be heard on the Reconsideration Motion and Fee Objection. (ECF Doc. # 70.) The U.S. Trustee filed an opposition to the Reconsideration Motion,[5] Gamliel filed an opposition to the Reconsideration Motion and response to the Fee Objection,[6] and Farkash filed a response to the Reconsideration Motion.[7] The Court heard oral argument on October 20, 2026 ("Hearing") and took the matters under advisement.[8]

---

- *Objection of Ahron Berlin to Fee Certification and Proposed Judgment . . . and Request to Defer Entry and Set a Response Process*, dated Sept. 17, 2026 (ECF Doc. # 66);
- *Proposed Supplemental Submission and Declaration of Ahron Berlin in Support of Reconsideration and Fee Objection; Request For Prompt Consideration*, dated Sept. 20, 2026 (ECF Doc. # 68);
- *Request For Prompt Conference and Clear Ruling Regarding Facially Impossible Service Chronology and Disputed Personal Responsibility*, dated Sept. 22, 2026 (ECF Doc. # 69); and
- *Reply of Ahron Berlin in Further Support of Reconsideration; Request for Leave to Submit Limited Declarations and a Limited Fee Sur-Reply*, dated Oct. 14, 2026 (ECF Doc. # 80).

5 *See United States Trustee's Objection to the Motion of Ahron Berlin to Alter or Amend the September 3 and September 8, 2026 Personal Sanctions Determinations; Alternative Request for Limited Further Proceedings*, docketed on Sept. 29, 2026 (ECF Doc. # 72).

6 *See Adversary Defendant Ahuva Gamliel's Objection to Berlin's Reconsideration Motion, and Reply to Berlin's Certification Objection*, dated Oct. 9, 2026 ("Gamliel Reply") (ECF Doc. # 78).

7 *See Response of Israel Farkash, a Party in Interest, to the Reconsideration Motion of Ahron Berlin*, dated Oct. 9, 2026 (ECF Doc. # 79).

8 The Scheduling Order provided a briefing schedule concluding on October 14, 2026 and prohibited the filing of further submissions absent Court authorization. (Scheduling Order at 3.) Nonetheless, on October 15, Berlin filed a document seeking authorization to file a response to Farkash's submission. (*See* ECF Doc. # 81.) The Court resolved Berlin's request by permitting him to respond to Farkash's submission orally at the Hearing. Six days *after* the Hearing, Berlin submitted yet another

## DISCUSSION

There are two matters before the Court: the Reconsideration Motion and the Fee Objection. The Court will address these matters in turn.

### A. Reconsideration Motion

Motions for reargument or reconsideration are subject to a "strict" standard and will "generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Id.* (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). "A motion to reconsider is not petitioner's opportunity to put forward evidence that he could have, but failed, to provide the Court when the Court initially considered the motion." *United States v. Posada*, 206 F. Supp. 3d 866, 868 (S.D.N.Y. 2016) (quotation omitted). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." *Wansdown Props. Corp. N.V. v. 29 Beekman Corp.* (*In re Wansdown Props. Corp. N.V.*), 626 B.R. 141, 144-45 (Bankr. S.D.N.Y. 2021) (quoting *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)).

---

document seeking authorization to file a response to Farkash's submission. (*See* ECF Doc. # 84.) This request prompted the filing of a response by Farkash. (*See* ECF Doc. # 85.)

Except to the extent the Court authorized Berlin to respond orally at the Hearing, the documents submitted in violation of the Scheduling Order (ECF Doc. ## 81, 84, and 85) are unauthorized and deemed stricken.

Berlin's arguments for reconsideration are all related to his prior assertion in the Original Berlin Submission that he did not participate in the MagicSoft Case. Specifically, Berlin asks this Court to re-open the proceedings to investigate whether he was involved in the filing of numerous documents in that case as well as a host of other documents filed in this Court and elsewhere. Berlin's arguments amount to a request to re-litigate an issue that this Court has already rejected in the Dismissal Decision. Berlin has not presented either an intervening change in controlling law or new evidence that was previously unavailable, which would alter the Court's prior ruling. Therefore, the Reconsideration Motion is denied.

**B. Fee Objection**

As stated above, this Court found that Berlin violated Federal Bankruptcy Rule 9011(b) by filing the original and amended involuntary petitions in the MagicSoft Case (together, the "Petitions") for an improper purpose. (Rule 9011 Decision at 10-11, 13.) The Court imposed monetary sanctions against Berlin under Bankruptcy Rule 9011(c)(4)(A)(iii) by requiring him to pay Gamliel the reasonable expenses and attorney's fees she incurred "directly resulting" from Berlin's filing of the Petitions. (*Id.*) The Court also directed Berlin to pay Gamliel the reasonable expenses and attorney's fees she incurred in prosecuting the Gamliel Sanctions Motion under Bankruptcy Rule 9011(c)(2)(C). (*Id.*)

As directed by the Court, Gamliel's attorney Joshua Eggnatz, Esq. ("Mr. Eggnatz") filed a certification setting forth the attorney's fees and expenses

Gamliel incurred ("Eggnatz Certification").[9] In total Gamliel seeks the award of (i) attorney's fees in the amount of **$60,775** comprising 110.5 hours billed by Mr. Eggnatz at a rate of $550 per hour, and (ii) expenses of **$404.75**.

Two issues remain outstanding. First, Bankruptcy Rule 9011(c)(4)(A)(iii) limits an award of attorney's fees and expenses to amounts "directly resulting" from the Rule 9011 violation. Second, attorney's fees and expenses awarded under Bankruptcy Rule 9011(c)(2)(C) and (c)(4)(A)(iii) must be "reasonable." These matters are addressed in the sections that follow.

### 1. Fees "Directly Resulting" From the Violations

To establish that attorney's fees and costs were incurred "directly resulting from the violation" of Bankruptcy Rule 9011, the movant must "establish a causal link" between the misconduct and the fees. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 n.5 (2017). Here, there is a causal link between Berlin's filing of the Petitions and much of the work Mr. Eggnatz performed, including (i) researching the effect of the Petitions on the Gamliel Action, (ii) meeting with Gamliel and other parties about the effect of the Petitions, (iii) taking actions in the Gamliel Action in response to the Petitions, and (iv) litigating matters in the MagicSoft Case and the MagicSoft Adversary Proceeding. (*See* Eggnatz Certification, Ex. B (Mr. Eggnatz's time records).)

There is one category of time records that merits further analysis. In the Gamliel Action, the MagicSoft Associates removed the litigation to federal court based on its

[9] *See Certification of Counsel, Joshua H. Eggnatz, in Support of Order Granting Entitlement to Attorney's Fees and Costs*, dated Sept. 16, 2026 (ECF Doc. # 64). The relevant time records were set forth in a spreadsheet attached as Exhibit B to the Eggnatz Certification; Mr. Eggnatz filed an updated Exhibit B on September 17 to fix formatting issues with the original Exhibit B. (*See* ECF Doc. # 67-1.) Further, Mr. Eggnatz supplemented the fee request in the Gamliel Reply to add 5.7 hours for ongoing work to obtain the Rule 9011 fee award. (*See* Gamliel Reply, Ex. B.)

connection to the MagicSoft Case and MagicSoft Adversary Proceeding. In response, Mr. Eggnatz expended 39.7 hours successfully prosecuting a motion to remand the Gamliel Action back to the Florida State Court.[10] On the one hand, there would have been no need to seek remand of the Gamliel Action if the initial Petition commencing the MagicSoft Case was never filed. Put differently, Gamliel would not have incurred these fees but for Berlin's filing the initial Petition. *See Goodyear*, 581 U.S. at 109 ("That kind of causal connection . . . is appropriately framed as a but-for test[.]"). On the other hand, Berlin was not a party to the Gamliel Action and did not seek removal of the litigation to federal court. Rather, it was the MagicSoft Associates, as defendants in the Gamliel Action, who made that election.

On this close question, the Court concludes that fees incurred by Gamliel to remand the Gamliel Action were not directly caused by Berlin's filing of the Petitions. Although the MagicSoft Associates relied on the MagicSoft Case to remove the Gamliel Action to federal court, Berlin was not involved in making that litigation decision. Under these circumstances, Berlin's filing of the Petitions is more accurately described as being "indirectly" tied to the removal of the Gamliel Action to federal court.

Therefore, the fee award to Gamliel must be **reduced** by **$21,835** representing 39.7 hours Mr. Eggnatz spent prosecuting the motion to remand the Gamliel Action.

### 2. Reasonableness

The remainder of Mr. Eggnatz's fees are reasonable. He is a partner at Eggnatz Pascucci, P.A. and has extensive experience in civil litigation. (Eggnatz Certification

[10] To Mr. Eggnatz's credit, he separately identified his time records for litigating the motion to remand. The Court appreciates his candor and acknowledgement that his work on that motion may not be directly linked to Berlin's Rule 9011 violations. (*See* Eggnatz Certification ¶¶ 16-17.)

¶¶ 2-6; see *id.*, Ex. A.) His hourly rate of $550 is reasonable given his experience[11] and commensurate with the rates charged by attorneys of comparable experience in this Circuit. *See, e.g.*, *Jackson v. Dejesus* (*In re Jackson*), Case No. 15-21233 (AMN), 2020 WL 718609, at *4 (Bankr. D. Conn. Feb. 12, 2020) (approving attorney's fees at a rate of $500 per hour). As set forth in the Dismissal Decision and the Rule 9011 Decision, the filing of the Petitions gave rise to many novel issues of law requiring Mr. Eggnatz to take action on Gamliel's behalf in this Court as well as in the Florida State Court. The Court has reviewed Mr. Eggnatz's time records and finds that the time spent in response to the Petitions, and to prosecute the Gamliel Sanctions Motion, was reasonable. The Court also finds that the expenses incurred were reasonable.

Therefore, Gamliel is awarded attorney's fees of **$38,940** representing 70.8 hours of billable time spent by Mr. Eggnatz and expenses of **$404.75**.

[*remainder of page intentionally blank*]

---

[11] Indeed, numerous courts have approved comparable hourly rates for Mr. Eggnatz. (*See* Eggnatz Certification ¶ 9 (listing cases and quoting court orders).)

## CONCLUSION

For the reasons stated, (i) the Reconsideration Motion is DENIED, and (ii) Berlin must pay Gamliel attorney's fees of $38,940.00 and expenses of $404.75 under Bankruptcy Rule 9011(c)(2)(C) and (c)(4)(A)(iii). Arguments made by the parties but not specifically addressed herein have been considered by the Court and are rejected or rendered moot by the Court's rulings. The Court will enter a separate order denying the Reconsideration Motion as well as a judgment awarding attorney's fees and costs to Gamliel.

**Dated: October 28, 2026**
**Poughkeepsie, New York**

**/s/ Kyu Y. Paek**
**____________________________**
**Hon. Kyu Y. Paek**
**U.S. Bankruptcy Judge**